**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Craig A. Graham, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

**INTRODUCTION**

1. This Affidavit is submitted in support of an application for a search warrant for information associated with a cellular telephone assigned phone number or call number 401-374-0760 that is stored at premises controlled by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The property to be searched is further described in Attachment A-1.

2. The Affidavit is also submitted in support of an application for a search warrant for information associated with a cellular telephone assigned phone number or call number 401-545-6807 that is stored at premises controlled by T-Mobile, doing business as Metro PCS, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The property to be searched is further described in Attachment A-2.

3. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon and T-Mobile (the "PROVIDERS") to disclose to the government copies of the information related to phone numbers 401-374-0760 and 401-545-6807 (the "TARGET CELLULAR DEVICES"), further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4. I am a Special Agent with Federal Bureau of Investigation ("FBI"), and I am assigned to the Boston Field Office, Providence, RI. I have been an FBI agent since 2010. As part of my duties, I am authorized to investigate violations of the laws of the United States, including criminal violations relating to child exploitation, child pornography, coercion and enticement, and transportation of minors, including, but not limited to, violations of 18 U.S.C. § 2422 and 2252. I have received training in the investigation of internet crime, child exploitation, transportation of minors, and child sexual abuse, and have observed and reviewed examples of child pornography (as defined in 18 U.S.C. § 2256). Moreover, I am a federal law enforcement officer authorized by law to request a search warrant.

5. The statements in this Affidavit are based in part on information provided by law enforcement officers employed by the Rhode Island West Warwick Police Department, as well as on my investigation. This Affidavit does not set forth all of my knowledge about this matter. I have set forth only the facts that I believe are necessary to assess the existence of probable cause for the requested warrants.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2422(b), enticement of a minor to engage in explicit sexual activity, and 18 U.S.C. § 2252(a)(2), receipt of child pornography ("SUBJECT OFFENSES") have been committed and that information related to the TARGET CELLULAR DEVICES will contain evidence of the offenses. There is also probable cause to search the information described in Attachment A1 and A2 for evidence, fruits, and instrumentalities of these crimes, as further described in Attachment B.

**PROBABLE CAUSE**

7. On March 8, 2024, a resident of West Warwick reported to the West Warwick Police Department (hereinafter "WWPD") that her minor daughter had been sexually assaulted by an adult male on or around December 30, 2023. The minor was identified as a 14-year-old female born in 2009 (hereinafter "MINOR 1").

8. Law enforcement officers spoke with MINOR 1's mother, and MINOR 1 was interviewed by both a physician at the Aubin Center in Providence, and a Forensic Interviewer at the FBI Providence office. Officers learned from MINOR 1 that in or around December of 2023, she communicated with an individual through the mobile application TikTok[1] and sent the individual multiple images of herself nude (in full or in part) and one video of herself nude (in full or in part) at the individual's request. MINOR 1 specified that she sent those images and that video using a social media application. MINOR 1 later identified the individual's TikTok account as having a display name of "tacobell999$$$" and a username of "@tacobell99948." MINOR 1 advised that she communicated with the same individual on Instagram[2] and identified the individual's Instagram account as either "kwakle" or "kwaxle."

9. I note based on my experience and training that the use of social media applications to transmit and/or receive image or video files involves the transmission of data over

---

[1] TikTok is a social media application developed and owned by Chinese Internet company ByteDance. TikTok is a short-form video hosting service which allows users to view and post short videos. Users can also comment on videos and directly message other users. The application uses the device's data plan or Wi-Fi to transmit and receive content.

[2] Instagram is a social media application developed and owned by Meta Platforms, Inc. Instagram allows users to view and post images. Users can also comment and directly message other users. The application uses the device's data plan or Wi-Fi to transmit and receive content.

the Internet and/or interstate lines of communication and accordingly involves a means or facility of interstate commerce.

10. MINOR 1 provided her own account information for the accounts that she used to communicate with the individual to law enforcement during her forensic interview. She provided her TikTok account as "juvajanga" and her Instagram account as "2fine4youbbyyy."

11. Preservation letters for all of these accounts were sent to the respective social media companies.

12. MINOR 1 also disclosed to the interviewers that on or about December 30, 2023, she snuck out of her mother's house to meet the same individual in person. The individual also communicated that he wanted to pay MINOR 1 $200 to let him perform oral sex on her.

13. I know through my training and experience that TikTok and Instagram are social media applications that are commonly accessed using a cell phone. MINOR 1 stated that the individual who communicated with her through those social media applications, also communicated with her while he was traveling to meet her.

14. MINOR 1 described the individual she met as having long brown hair, a brown beard, and wearing glasses. In her conversations with the individual in person and online, he stated that he was from Newport, RI, was 29 years old, and was named "Pat." MINOR 1 stated that she may have initially told Pat that she was 16, but that she later communicated and he understood that she was 14 years old.

15. MINOR 1 described the vehicle Pat arrived in as a white van which had the rear seats removed. MINOR 1 first sat in the front passenger seat of the van while talking to Pat. They then moved to the back of the van, where Pat pulled up MINOR 1's sweatshirt and kissed

4

her chest. Pat then pulled her sweatpants and underwear down, and his lips and tongue touched her vagina. Pat's penis and fingers also touched the inside of MINOR 1's vagina. At the end of the encounter, Pat gave MINOR 1 two hundred dollars.

16. WWPD obtained consent to search MINOR 1's cell phone. An extraction of the phone's contents was performed and the results of the extraction was reviewed by FBI Providence. The telephone number associated with MINOR 1's device was found to be 401-545-6807. MINOR 1's mother advised law enforcement that she had been in control of MINOR 1's phone since approximately February 9, 2024. Prior to that time, MINOR 1 had blocked @tacobell99948's account. MINOR 1's mother unblocked @tacobell99948 and communicated with the account through MINOR 1's TicTok account. MINOR 1's mother said that she engaged in the communications to learn more about the user of @tacobell99948.

17. A review of the cellphone extraction for images identified multiple images of what appear to be MINOR 1 disrobed. The images depict what appears to be MINOR 1's nude torso, including her breasts and vulva. The images appear to be taken by MINOR 1 using a mirror. This review did not include a review of image transmission information.

18. A review of the cellphone extraction identified communications from February 21, 2024 to March 10, 2024 between MINOR 1's TikTok account (which at the time was being used by MINOR 1's mother) and TikTok account @tacobell99948. In the following communications @tacobell99948 communicated that he wanted to have sexual relations with MINOR 1:

| 02/22/2024 - 3:35pm | MINOR 1's account | still tryna link? |
| 02/22/2024 - 3:36pm | @tacobell99948 | Ya hbu<br>Thinkin bout u m |

| 02/22/2024 - 3:39pm | MINOR 1's account | Wat you thinkin about |
| 02/22/2024 - 3:39pm | @tacobell99948 | Smashin u |
| 02/22/2024 - 3:41pm | MINOR 1's account | tell me more |
| 02/22/2024 - 3:42pm | @tacobell99948 | Ur right lll bod<br>Wanna eat u out |
| 02/22/2024 - 3:39pm | MINOR 1's account | Wat you thinkin about |
| 02/22/2024 - 3:39pm | @tacobell99948 | Smashin u |
| 02/22/2024 - 3:41pm | MINOR 1's account | tell me more |
| 02/22/2024 - 3:42pm | @tacobell99948 | Ur right lll bod<br>Wanna eat u out<br>Taste u<br>Wanna smash u so bad m<br>U like?<br>lol u rly busy rn it ok |
| 03/08/2024 - 3:42pm | @tacobell99948 | [a link was sent which was no longer accessable] |
| 03/10/2024 - 6:20pm | @tacobell99948 | Wanna link wid u |

19. Consent was also obtained to search MINOR 1's iPad. An extraction of the iPad's contents was performed and images obtained through the extraction were reviewed by FBI Providence. That review found a video that depicts a female inserting a toothbrush handle into her vagina. The video shows only the female's vagina and hand. That review did not include a review of video transmission information.

20. A subpoena was issued to TikTok for account information related to the account @tacobell99948. TikTok provided the following subscriber information:

>Username: tacobell99948

>Signup Device Info: iPhone15,4

      Signup date 01/03/2024 05:25:13am (UTC)

      Phone number: +14013740760

      Email: drewdrewdrew134@yahoo.com

21.    MINOR 1's mother also provided law enforcement with a screen shot of the Instagram account "kwaxle."  MINOR 1's mother obtain the screen shot by navigating to the Instagram account using her own cellular telephone.  MINOR 1's mother found the kwaxle account based on MINOR 1's recollection of the account's name and MINOR 1 later identified the adult male depicted in the screen shot as Pat, the individual she had sexual relations with on or about December 30, 2023.

22.    WWPD was able to identify the individual depicted in the kwaxle account as Kyle Patrick TORMEY, born in 1984.  A search of law enforcement databases indicated that TORMEY's home address was 19 Caleb Earl Street, Newport, Rhode Island.  A comparison of TORMEY's driver's license photo indicated that TORMEY was the individual depicted on the kwaxle account.  The kwaxle account also displayed an image of TORMEY sitting in front of a door that was identified as the front door to 19 Caleb Earl Street, Newport, Rhode Island.  Below are images of the kwaxle account and TORMEY's driver's license photo:




23.     A subpoena was issued to Instagram for account information related to the account kwaxle. Subscriber information for the account indicated a verified email address of kwaxledelic@gmail.com. A subpoena was then issued to Google for account information related to kwaxledelic@gmail.com and the following subscriber information was returned:

>   Name: kyle bobyle
>
>   Recovery email: kylesantiques@gmail.com

24.     A subpoena issued to Google for account information related to kylesantiques@gmail.com returned the following subscriber information:

>   Name: kyle tormey
>
>   Recovery email: vinylgururecordshop@gmail.com

Recovery SMS: +4013740760

25. Open-source searches indicated that TORMEY is an owner/operator of Vinyl Guru Record Shop located at 154 Broadway, Newport, RI 02840 and that telephone 401-374-0760 is associated with Vinyl Guru Record Shop on multiple websites. Surveillance on March 24, 2024 observed TORMEY entering and exiting Vinyl Guru Record Shop located at 154 Broadway, Newport, Rhode Island, and observed posted business hours of the shop as 12pm to 6pm. The telephone number associated with Vinyl Guru Record Shop is the same number included in the subscriber information for TikTok account @tacobell99948 and the same telephone number in the subscriber information for the recovery email address of the email used to create Instagram account kwaxle. The TikTok communications which occurred between MINOR 1's account and @tacobell99948 occurred during the posted business hours of the Vinyl Guru Record Shop.

26. A subpoena issued to Verizon for account information related to telephone number 401-374-0760 returned information indicating that account was associated with Mary Tormey of Swansea, Massachusetts. A law enforcement database indicated that Kyle TORMEY's mother's name is Mary Tabor. A search of Department of Motor Vehicle records indicated that Mary Tabor has an alias of Mary Tormey and lives at the same Swansea, MA, address as that associated with telephone number 401-374-0760.

27. Department of Motor Vehicles records also indicated that a white 2011 Ford, Massachusetts registration 1HLB49, is registered to Mary Tabor at the same Swansea, MA, address. Law enforcement records described the 2011 Ford as a transit van. Subpoenaed records from the Rhode Island Turnpike and Bridge Authority indicated that 1HLB49 traveled

Westbound over the Newport Bridge at approximately 6:55pm on December 30, 2023, and returned Eastbound over the Newport Bridge at approximately 12:11am on December 31, 2023.

28. Surveillance conducted on March 14, 2024, observed TORMEY sitting in the open doorway of 19 Caleb Earl Street smoking a cigarette. Additionally, a subpoena issued to Rhode Island Energy returned customer information indicating that TORMEY has an active electric and gas account for 19 Caleb Earl Street with a provided customer telephone number of 401-374-0760.

29. All of the above facts and circumstances taken together leads your Affiant to believe that evidence of the offense(s) under investigation is located, stored, or contained at the property, premises, or place identified and described in Attachments A-1 and A-2 of this application for search warrant.

## NEED FOR REQUESTED RECORDS

30. The records requested for the TARGET CELLULAR DEVICES are necessary for investigators to determine if Kyle Patrick Tormey was located in the vicinity of the incident described within this affidavit and/or whether Tormey was located in the vicinity of MINOR 1. This will be achieved by analyzing the cellular towers and sectors utilized by the TARGET CELLULAR DEVICES. The records will also help establish the users, which is necessary for evidentiary purposes in potential future proceedings, by analyzing the phone numbers in contact with the TARGET CELLULAR DEVICES.

31.     In addition to requesting records of usage, the content of voicemail recordings and text messages associated with the TARGET CELLULAR DEVICES are also requested.[3]  Both types of content can provide law enforcement with insight into the activities of the user of a cellphone.  Oftentimes, voicemail recordings are messages left for the user of a cellphone as a follow-up to previous conversations.  Consequently, these one-sided audio recordings can assist in providing context to the records of usage.  Likewise, the content of text messages provides law enforcement with even more clarity as to the activities of the user of a cellphone.  The text message content represents the exact words sent and received by the user during the communications observed in the records of usage.

32.     Information is being sought for the time frame of December 01, 2023, through and including, April 4, 2024.  This time frame encompasses the duration of the crimes currently being investigated as well as a short period of time after.  Oftentimes by limiting the scope of the time frame for which records are sought, law enforcement is unable to identify a pattern of life for a suspect and may interpret data for a single day incorrectly when/if compared against a slightly wider time frame.  By requesting the complete time frame of records, your Affiant believes law enforcement will be able to identify a pattern of life for Tormey, which will reveal whether they regularly frequent the incident locations or only happened to be present in the vicinity during the time of each incident.  This information is critically important to

---

[3] Most cellular providers, to include those associated with the TARGET CELLULAR DEVICES, retain and can oftentimes provide the content of voicemail recordings. On the contrary, cellular providers are less likely to retain text message content, however, that is subject to change without notice to law enforcement.

understanding if the TARGET CELLULAR DEVICE's presence near the crime scene(s), if applicable, is normal or outside the regular pattern of life for the user(s).

## OVERVIEW OF RELEVANT TECHNOLOGY

33. In my training and experience, I have learned that PROVIDERS are companies that provides cellular telephone service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in most cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

34. Based on my training and experience, I know that PROVIDERS can collect cell-site data about the TARGET CELLULAR DEVICES. I also know that wireless providers such as the PROVIDERS typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

35.     Based on my training and experience, I know that wireless providers such as the PROVIDERS collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the PROVIDERS typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the users of the TARGET CELLULAR DEVICES and may assist in the identification of co-conspirators and/or victims.

## **CONCLUSION**

36.     Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

37.     I further request that the Court direct PROVIDERS to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served electronically to the PROVIDERS, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Sworn to under the pains and penalties of perjury,

Craig A. Graham
Special Agent

_____
Craig A. Graham
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____
(specify reliable electronic means)

_____     _____
Date                         Judge's signature

_____     _____
City and State               Magistrate Judge Patricia A. Sullivan

14

# ATTACHMENT A1

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (401) 374-0760, which has a subscriber listed as Mary Tormey that is stored at a premise controlled by Verizon, headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT A2

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number (401) 545-6807, stored at a premise controlled by T-Mobile, doing business as Metro PCS, headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Provider**

To the extent that the information described in attachment specifying the property to be searched (Attachment A1 or A2) is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in the attachments specifying the property to be searched (Attachment A1 or A2) for the time period December 1, 2023 to April 4, 2024:

a. The following information about the customers or subscribers of the Account:

  i. Names (including subscriber names, usernames, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long-distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities, including the registration Internet Protocol ("IP") address and any other Account metadata;

  viii. Any additional numbers, current or expired, associated with the Target Account; and

  ix. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

  ii. Voicemail and SMS/MMS content stored on the network;

  iii. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Accounts, to include all voice, SMS, MMS, and data activity; and

  iv. All records containing round-trip-distance measurements and/or timing advance information for each connection made to or from the Accounts (CDMA, EVDO, UMTS, LTE, etc.), to include LocDBoR, RTT, True Call Measurement Data, Per Call Measurement Data, and Reveal Reports.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 2422(b) and 18 U.S.C. § 2252(a)(2) involving Kyle Tormey during the period including December 1, 2023, to April 4, 2024.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

authorized to review the records produced by the Provider in order to locate the things particularly described.